IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FREEDOM WATCH, INC.**<br><br>            Plaintiff,<br>    v.<br><br>**NATIONAL SECURITY AGENCY, ET. AL.,**<br><br>            Defendants. | Civil Action No. 1:12-cv-01088-RLW |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pursuant to the Freedom of Information Act ("FOIA"), Plaintiff Freedom Watch ("Freedom Watch") submitted to Defendants a request for certain records relating to a June 1, 2012 New York Times article by David E. Sanger, which discussed President Obama's Orders regarding Cyberattacks on Iran. Interestingly, Sanger's article was published after an interview with the Secretary of State and appeared to rely heavily on classified information not available to the public. Given the public concern for the government leak of such confidential information, and the increased potential for retaliatory attacks by Iran, Freedom Watch sought these records to inquire into the government's conduct, motive, and reasoning for leaking the confidential information to Sanger. Regrettably, after months of waiting and repeated request, Defendants continued to avoid their disclosure obligations under FOIA and have adamantly refused to produce complete records.

Despite Freedom Watch's simple and uncomplicated request, Defendant Department of State has engaged in what now is an apparent effort to prevent Freedom Watch and the public

1

from timely obtaining this information on a matter of public importance. Unfortunately, this is not surprising, particularly as the Secretary of State has a natural inclination to keep such information from the public, as was evidenced by the recent lack of public disclosure in the Benghazi situation. However, given the legislative intent behind FOIA, and the policy of ensuring openness in government to safeguard proper operation of democracy, the information requested by Freedom Watch is subject to disclosure by Defendant under the provisions of FOIA. Defendant is insulated from openness in government by arbitrarily attempting to circumvent the act by denying access to Freedom Watch, and the public, of such vital information by failing to conduct an adequate search and producing complete records as explained below.

## BACKGROUND

On June 1, 2012, the New York Times published two articles, "Obama Order Sped Up Wave of Cyberattacks Against Iran" by David E. Sanger. Evidently, the government gave Sanger access to records not available to the public regarding President Obama's Order for cyber-attacks against Iran, seemingly following an interview between Sanger and Secretary of State Hillary Clinton. In fact that the article relied in large part on previously classified information. Despite the confidentiality of these documents, as a result of leaking such classified records, and the foreseeability of Sanger's publication in the New York Times, the government intentionally perpetuated the risk of potential retaliation by Iran as well as raised serious public concern as to the government's motive in releasing such classified records.

In light of the the significant public concern, particularly given the inherent danger that resulted from releasing such information, Freedom Watch sought access to these records in order to determine the government's motive and reasoning for providing such confidential information

to Sanger. As such, pursuant to the Freedom of Information Act, Freedom Watch requested that Defendants produce all records that referred to or related to any and all information released to David E. Sanger and/or made available to him, including all correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things.

Defendant, however, has continuously attempted to circumvent its disclosure obligations under FOIA. Defendant Department of State first failed to timely respond to Freedom Watch's FOIA request, and then refused to produce any records, falsely claiming that Freedom Watch had not submitted a proper FOIA request. As a result, court intervention inevitably became necessary and on December 18, 2012, the Court ordered that State was to (1) conclude its search for the above records relating to the June 1, 2012 New York Times articles, (2) process and produce any non-exempt records, and (3) produce a Vaughn index "to the extent one is required." Dkt. No.10.

On March 18, 2013, *nine months* after Freedom Watched made the initial request for the production of said documents, the Office of Information Programs and Services ("IPS") of the Department of State notified Freedom Watch that the department had conducted a search and that no responsive records had been located. Thus, IPS advised Freedom Watch that the processing of its request had been completed.

However, on April 17, 2013, Defendant notified Freedom Watch, through a letter from Sheryl L. Walter (Director of the Office of Information Programs and Services), that the Bureau of Public Affairs had "revisited its searches" and had located three documents "responsive" to Freedom Watch's request, one of which originated with another agency and had been referred to

3

that agency for review. Declaration of Sheryl L. Walters "Walters Decl." at Exhibit 4. Without identifying the "originating agency" or providing any specificity, Defendant further stated that "upon review, the originating agency determined that most of the information in that document was not responsive to [Freedom Watch's] request and redacted the non-responsive information accordingly." *Id.* Defendant ultimately produced only thirty-two (32) pages, seventeen (17) of which were blank but for being marked as "non-responsive."

Defendant's production of records was clearly deficient and is in no doubt simply another attempt by Defendant to once again circumvent its disclosure obligation under FOIA and to mislead this court. First, Defendant conveniently fails to provide the identity of the custodian of records at the "originating agency," (which, according to Defendant, was responsible for redacting the documents as non-responsive). Moreover, Defendant's response lacked any description of the "non-responsive" documents, did not identify the alleged "non-responsive" documents, and failed to indicate the grounds as to why these documents were non-responsive, and thus, not subject to production. Further, by her own admission, Sheryl L. Walters lacked personal knowledge regarding the review of said documents, the contents of such documents, and whether said document were, in fact, non-responsive to Freedom Watch's request, thereby, undermining the credibility of her Declaration filed in support of Defendant's Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56 (a). Judicial review of withholding under FOIA is de novo. 5 U.S.C. Section 552 (a)(4)(B). If material facts are genuinely at issue or, though undisputed, are susceptible to divergent inference

bearing upon an issue critical to disposition of the case, summary judgment is not available. *Alyeska Pipeline Service Co. v. EPA*, 856 F.2d 309 (D.C. Cir. 1998).

## ARGUMENT

### A. SUBSTANTIAL DOUBTS EXIST AS TO THE ADEQUACY AND REASONABLENESS OF DEFENDANT'S SEARCH FOR THE REQUESTED RECORDS PURSUANT TO THE REQUIREMENTS OF FOIA

The adequacy of an agency's search is crucial to a FOIA plaintiff and proper judicial administration of the case. To simply accept the government's claim that no records exist responsive to a FOIA request would allow the government to circumvent their disclosure obligations required by the provisions of FOIA. Such an approach would directly contravene the policy behind the ACT, as an agency could easily avoid scrutiny of its search techniques, inevitably rendering the Act meaningless. As such, in addressing a FOIA request, the district court must "expressly conclude that the search was adequate or that it satisfied the reasonableness standard." *Krikorian v. Department of State*, 984 F.2d 461 (D.C. Cir. 1993). Specifically, in evaluating the adequacy of an agency's search for records responsive to a FOIA request, the issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate. *Weisberg v. United States Dept. of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983).

Generally, an agency is permitted to establish the adequacy of its search through declarations. However, summary judgment based on the government's declaration alone is inappropriate where the agency's description of its search is conclusory, the record raises serious doubts as to the completeness of the agency's search, there are indications of overlooked material, or there is evidence of the agency's bad faith. See *Valencia-Lucena v. United States Coast Guard, FOIA/PA*, 180 F.3d 321, 326 (D.C. Cir. 1999); *Exxon Corp. v. FTC (1)*, 466 F.

Supp. 1088, 1094 (D.D.C. 1978), aff'd, 663 F.2d 120 (D.C. Cir. 1980); *Neugent v. Department of Interior*, 640 F.2d 386 (D.C. Cir. 1981); *Weisberg v. Department of Justice,* 543 F.2d 308 (D.C. Cir. 1976).

Defendant's purported search, records produced, and accompanying declaration by Sheryl Walters are insufficient to warrant summary judgment for the defendant. In particular, the record raises substantial doubts as to the completeness of Defendant's search and contains positive indications of overlooked material, particularly as the documents produced contain only "talking points," and were clearly intended to be a guide for the actual interview. The incompleteness and inadequacy of Defendant's search is further supported by the fact that the documents specifically indicate that there would be "on the record" quotes. Thus, it can reasonably be inferred that someone was present during the interview, taking notes and/or preparing a record of the interview for later review.

In addition, the conclusory and misleading declaration of Sheryl L. Walters furnished by Defendant Department of State in support of its Motion for Summary Judgment contains significant defects, and consequently, fails to establish that an adequate search was conducted. As an initial matter, in her April 17, 2013 letter to Freedom Watch, Sheryl L. Walters concedes that one of the documents located had been referred to the "*originating agency*" for review. Walters Declr. at Exhibit 4. She further admits that the "*originating agency* determined that most of the information in the document was not responsive…and [the *originating agency*] redacted the non-responsive information accordingly." [Emphasis added]. *Id.* Thus, Sheryl L. Walters implicitly admits she lacked the requisite personal knowledge as to the information in the document, whether it was, in fact, non-responsive, and whether redaction of the document was appropriate. Clearly, the declaration is nothing more than speculation and conclusory statements

6

insufficient to establish that a reasonable search was, in fact, conducted. Rather, the declaration raises serious doubts as to the credibility of Defendant, evidences Defendant's bad-faith in refusing to be forthcoming with the records, and supports the finding that the Office of Information Programs and Services only conducted, at most, an insufficient search for the records.

In addition, neither the declaration, nor the memorandum, makes clear how many subsidiary departments within the Department of State actually exist, and whether a search was performed in each of the subsidiary departments.  The Defendant discloses the Office of Information Programs and Services searched the Bureau of Public Affairs and the Bureau of Near Eastern Affairs as sources of information, but in no way indicates whether this is an exhaustive list of departments that may hold relevant documents. Walters Declr. at 7. Freedom Watch finds it hard to believe that a large federal agency, with offices throughout the world, only has two databases from which to search.  It is unclear how many databases actually exist and whether there were any that were left unsearched.

Moreover, the meager records actually produced by Defendant are simply "boilerplate" documents that contain only "talking points" for the Secretary of State's interview with Sanger. Clearly, these "talking points" were merely a guideline for the interview, and undoubtedly, a subsequent and more detailed conversation took place when Sanger met with the Secretary of State. As stated in one of the document produced by Defendant, the interview between Sanger and the Secretary of State was in regard to the Obama Administration's foreign policy and would be "…on background with on-the-record quotes subject to approval." Thus, it is indisputable that someone was undoubtedly present at the interview and was responsible for taking notes, preparing memoranda, and/or preparing some sort of record of the Secretary of State's

statements during the interview. Simply put, it is inconceivable that sophisticated persons and entities such as the Secretary of State did not keep written or electronic recordations[1] of such interview, including notes pertaining to her responses and statements. Accordingly, further records exists that, at a minimum, provide a record of the interview and are clearly subject to production by Defendant. However, Defendant has failed to produce such records.

### B. DEFENDANT'S FAILURE TO COMPLY WITH VAUGHN PROCEDURES NECESSITATES FURTHER DISCOVERY AND MANDATES DENIAL OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In balancing the government's interest in preventing the compromise of confidential records with the public's right to access, the United State Court of Appeals for the D.C. Circuit established specific discovery procedures to be employed in FOIA cases. Specifically, the "Vaughn Procedures" require the government to provide the plaintiff and the court with an itemized "index" of the withheld records that describes each document or withheld portion and gives a detailed justification of the agency's grounds for withholding, correlating each exemption claimed with the record or portion to with it applies. *Vaughn v. Rosen (1),* 484 F.2d 820 (D.C. Cir. 1973).

Defendant has failed to provide any document representative of a "Vaughn Index." Rather Defendant has furnished insufficient information to warrant summary judgment in their favor, particularly as they failed to provide:

---

[1] The District of Columbia only requires one person consent to record electronically. Recoding of interviews is an accepted practice to ensure the accuracy of reporting and to avoid misquoting. This is particularly necessary when the person being interviewed is the U.S. Secretary of State. It is for this reason Plaintiff believes an electronic recording of this interview is likely to exist.

1) The identity of the custodian of records at the "originating agency" in which one of the documents produced allegedly originated as he/she is the one responsible for determining whether a document is responsive or not;

2) A description of each document that was redacted as being "non-responsive" to Freedom Watch's request; and

3) A *detailed* justification of the agency's grounds for withholding the redacted portions.

As such, Defendant's production of the requested records, or the lack thereof, is clearly deficient and does not comply with the Vaughn Procedure. Therefore, summary judgment is inappropriate particularly in light of the insufficient information furnished by Defendant.

### C. A MOTION FOR SUMMARY JUDGMENT IS IMPROPER AS FURTHER DISCOVERY NEEDS TO BE CONDUCTED REGARDING THE REASONABLENESS OF DEFENDANT'S SEARCH, AND THUS, GENUINE ISSUES OF MATERIAL FACT EXIST

Rule 56(d) of the Federal Rules of Civil Procedure regarding Summary Judgment provides that "if a nonmovant shows by affidavit or declaration that, for specified reasons it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." As provided for in Rule 56(d)(2), discovery in FOIA cases is often necessary to permit adversarial testing of the government's claims, and to provide plaintiffs with the information they need to advance their position and to establish a record sufficient to permit the courts to resolve FOIA disputes.  For example, discovery may be useful in testing whether an adequate search has been conducted by a government agency for requested records as required by the provisions FOIA. Thus, "discovery benefits not only the requestor but also the court, which must review an agency decision not to disclose." *Lodrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, n. 63 (D.C. Cir. 1980)

Discovery is especially important in FOIA cases since one party has an effective monopoly on the relevant information. *Ray v. Turner*, 587 F.2d 1187, 1218 (D.C. Cir. 1978). In fact, there is arguably more of a role for discovery in FOIA cases than in other actions reviewing agency decisions, particularly since plaintiffs in FOIA cases suffer the inherent handicap of not knowing the extent of government records, the location of such information, or their contents of relevant documentation.

Defendant has furnished a cleverly crafted, evasive, and incomplete sworn declaration of Sheryl L. Walter, submitted by Defendant in an effort to end this case through summary judgment before Freedom Watch is able to obtain the information to which it has a right to under FOIA. However, for the court to accept Defendant's word that an adequate search had been conducted and that no further records exist would be legally inappropriate. Defendant, not Freedom Watch, is in sole control of the operative facts upon which they base their court ordered Motion for Summary Judgment. To simply accept Defendant's representations as true, without allowing for discovery to test these "facts," would be an abuse of discretion, particularly as discovery will likely show that Defendant have not been honest, candid, and forthcoming to this court and to Freedom Watch.

As such, Freedom Watch therefore submits the declaration of chairman of Freedom Watch, pursuant to Rule 56, "that it cannot present facts essential to justify its opposition." Further, given the significant defects in Sheryl L. Walter's declaration, as discussed above, and because no documents, notes, writings, or any other detailed record from Sanger's interview with the Secretary of State was ever produced, Freedom Watch requests discovery to (1) determine where such records can be found and thus produced; (2) determine the identity of the records redacted as non-responsive; and (3) ascertain a sufficient description of the redacted documents

and assess whether these documents were, in fact, non-responsive. Thus, Freedom Watch respectfully request that this court allow Freedom Watch to take discovery. To grant Defendant's Motion for Summary Judgment, and to consequently deny Freedom Watch the ability to conduct discovery, would undoubtedly contravene FOIA's unambiguous policy in favor of the fullest public disclosure of government records, and inappropriately protect Defendants from scrutiny.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Freedom Watch respectfully requests that this court deny Defendant's Motion for Summary Judgment and order that appropriate discovery be permitted to be taken.

Respectfully Submitted,

 /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW #345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com