# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 2, 2015          Decided April 24, 2015

No. 14-5174

FREEDOM WATCH, INC.,
APPELLANT

v.

NATIONAL SECURITY AGENCY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01088)

*Larry Klayman* argued the cause and filed the briefs for appellant.

*Catherine H. Dorsey*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney at the time the brief was filed, and *Matthew M. Collette*, Attorney.

Before: ROGERS, TATEL, and SRINIVASAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

2

TATEL, *Circuit Judge*: On June 1, 2012, the *New York Times* published an article by investigative reporter David E. Sanger describing a classified government initiative to "undermine the Iranian nuclear program" through "increasingly sophisticated attacks on the computer systems that run Iran's main nuclear enrichment facilities." David E. Sanger, *Obama Order Sped Up Wave of Cyberattacks Against Iran*, N.Y. TIMES, June 1, 2012, at A1. Later that day, appellant Freedom Watch, a self-styled "public interest group acting on behalf of the public at large," Appellant's Br. 2, filed a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking records relating to the Sanger article from four federal agencies—the Central Intelligence Agency (CIA), the National Security Agency (NSA), the Department of Defense (DoD), and the State Department. Specifically, Freedom Watch sought documents concerning each of the following topics (only the second is at issue here):

> 1) Any and all information that refers or relates to the New York Times article . . . and which information was provided and leaked to Mr. Sanger and the New York Times;
>
> 2) Any and all information that refers or relates in any way to information released to David E. Sanger and/or made available to him;
>
> 3) The names of the persons, employers and job titles, and addresses of those who leaked the above information to David E. Sanger;

3

4) Communications with The White House and/or Office of the President and/or Vice President that refer or relate in any way to the leaked information and/or the reasons for leaking the information;

5) Any and all information that refer[s] or relate[s] to the decision to leak the above previously classified information; [and]

6) Any and all information that refers or relates to government agencies deciding to investigate who leaked the above previously classified information.

Compl. 2–3 (internal quotation marks omitted).

Three of the agencies—CIA, NSA, and DoD—denied the request on national security grounds. Issuing what is known as a *Glomar* response, each agency stated that it could "neither confirm nor deny the existence or non-existence" of responsive records. *See* Defs.' Mot. for J. on the Pleadings & Mot. for Partial Summ. J. 2–4 & Exs. A, B, D (citing 5 U.S.C. § 552(b)(1)). CIA and NSA also advised Freedom Watch of its right to administratively appeal, and the State Department informed the organization that it was processing the request. *See id.* at Ex. C; *see also* 5 U.S.C. § 552(a)(6)(A)(i).

After FOIA's twenty-day deadline expired, 5 U.S.C. § 552(a)(6)(A), Freedom Watch filed suit in the U.S. District Court for the District of Columbia seeking to compel the four agencies to search for and produce responsive documents. Contending that Freedom Watch had failed to exhaust its administrative remedies, two of the agencies—CIA and

4

NSA—moved for judgment on the pleadings, and DoD, relying on FOIA's national security exemption, 5 U.S.C. § 552(b)(1), moved for summary judgment. The district court granted each motion, resolving all claims in those agencies' favor. The State Department also moved for judgment on the pleadings, and the district court, finding requests 1 and 3–6 unduly speculative, granted the motion as to all but the second, i.e., information released to David Sanger. *See* Defs.' Mot. for J. on the Pleadings & Mot. for Partial Summ. J. 8–18; *Freedom Watch, Inc. v. NSA*, No. 1:12-cv-01088, 2014 WL 2768849, at *1 (D.D.C. June 12, 2014) (citing District Court Order, Docket No. 8 (Dec. 13, 2012)).

Undertaking both electronic searches of record systems and manual searches of physical documents, the State Department discovered and produced three responsive records. But after moving for summary judgment on the ground that it had thus satisfied its FOIA obligations, the Department found additional responsive records and decided to search other locations. To accomplish this, it sought and received a 60-day extension to conduct a supplemental search and to respond to Freedom Watch's opposition brief, during which time it uncovered 76 more responsive documents. In the end, the State Department produced a total of 79 documents responsive to Freedom Watch's FOIA request, releasing 58 in full and 20 in part, and withholding one in its entirety. *See Freedom Watch*, 2014 WL 2768849, at *1–2 (outlining search efforts and sequence of events). Responding to Freedom Watch's opposition brief, the Department described its additional search efforts and stated that it "would not oppose the filing of a surreply [by Freedom Watch] to address the documents produced as a result of th[e] supplemental search." State Dep't Reply in Supp. of Mot. for Summ. J. 2 n.1. Freedom Watch never filed a surreply, though

5

it did move to depose a State Department records custodian, arguing that the initial search was part of a pattern of "delay, obfuscation, and outright obstruction of justice." Mot. for Discovery 1. The district court, finding no evidence of bad faith by the State Department, denied the motion. *See Freedom Watch*, 2014 WL 2768849, at *2 (citing District Court Minute Order (June 18, 2013)). The court also granted the State Department's motion for summary judgment, noting that "Freedom Watch does not object to the adequacy of the [Department's] supplemental searches" and concluding that the State Department had "met its burden by conducting searches that were reasonably calculated to find responsive records." *Id.* at *3–4.

In this appeal, Freedom Watch challenges the *Glomar* responses of NSA, CIA, and DoD, as well as the adequacy of the State Department's search. As to that search, Freedom Watch argues that the district court erred in granting the State Department summary judgment because (1) the search impermissibly entailed electronic key-word searches, (2) the Department improperly withheld a one-page press-briefing memo pursuant to FOIA's deliberative-process privilege, 5 U.S.C. § 552(b)(5), and (3) Freedom Watch was entitled to additional discovery—in particular, an opportunity to depose a State Department records custodian—before summary judgment.

After briefing was complete in this court but prior to oral argument, Freedom Watch moved to supplement the record with news articles relating to the revelation that former Secretary of State Hillary Clinton, while leading the State Department, had maintained a private email account run on a private server. *See* Appellant's Mot. to Supplement R.; *see also, e.g.*, Danny Yadron & Rebecca Ballhaus, *Hillary*

6

*Clinton's Custom Email Based on Server Near Her Home*, WALL ST. J., Mar. 5, 2015. Alleging that the State Department had failed to produce all records responsive to its FOIA request due to the former Secretary's use of the private server, Freedom Watch sought to "expand [the] search for documents on remand." Appellant's Mot. to Supplement R. 1–2. In response, the government suggested that we remand the case to the district court to "permit the State Department to process and search the emails recently provided by former Secretary Clinton to the agency." Gov't Resp. to Mot. to Supplement R. 2. The government explained that the State Department plans to review those emails for possible public release and to make them "available to the public by posting them on a State Department website." *Id.* This plan, the government asserted, would not only render unnecessary Freedom Watch's request to supplement the record, but also "make the maximum number of records available to plaintiff . . . in the shortest amount of time, and [] be considerably more efficient than reviewing the documents piecemeal in response to subject-specific FOIA requests." *Id.* The government also explained that the Department's search for responsive records had been more extensive than described to the district court, even "including some records of the Office of the Secretary." *Id.* at 3. As a result, "partial remand is appropriate to provide the State Department an opportunity to supplement the record as to what searches were actually performed with regard to records maintained by the Executive Secretariat." *Id.* at 3–4.

Based on the government's representations, we shall deny Freedom Watch's motion to supplement the record and remand to the district court to manage record development and oversee the search of the former Secretary's emails for records responsive to Freedom Watch's FOIA request. In doing so, we remind the State Department that, although it

may choose of its own accord to release the emails to the public at large, it has a statutory duty to search for and produce documents responsive to FOIA requests "in the shortest amount of time." *Id.* at 2; *see also* 5 U.S.C. § 552(a)(6)(A) (providing FOIA's stringent time limits). The district court should therefore determine the most efficient way to proceed *under FOIA*.

This leaves Freedom Watch's remaining arguments, which we can easily resolve. As to the *Glomar* responses of NSA and CIA, the district court properly granted the agencies judgment on the pleadings because Freedom Watch failed to internally appeal the agencies' denials and thus to exhaust its administrative remedies before seeking judicial review. *See Sinito v. DOJ*, 176 F.3d 512, 516 (D.C. Cir. 1999) ("FOIA requires each requestor to exhaust administrative remedies" before seeking judicial review). Summary judgment in favor of DoD was likewise proper because the agency supported its *Glomar* response with an uncontroverted declaration explaining "the justifications for nondisclosure with reasonably specific detail." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotation marks and citation omitted). As the declaration explains, because Freedom Watch seeks documents concerning a leak of information about cyberattacks on Iran's nuclear facilities, "[a]cknowledging the existence or non-existence of records responsive to plaintiff's request could reveal whether the United States, and specifically DoD, conducts or has conducted cyber-attacks against Iran." Defs.' Mot. for J. on the Pleadings & Mot. for Partial Summ. J. Ex. D, at 4. In DoD's judgment, such a disclosure would "cause damage to national security by providing insight into DoD's military and intelligence capabilities and interests," *id.* at 5, and we accord that judgment "substantial weight," *Wolf*, 473 F.3d at 376

(courts must accord "substantial weight" to "agency assertions of potential harm made in order to invoke the protection of FOIA['s national security exemption]").

All of Freedom Watch's objections to the district court's grant of summary judgment to the State Department fail as well. First, although the State Department provided declarations outlining its search methods, which included full-text electronic searches for relevant terms like "Sanger" and "David Sanger," *see* State Dep't Mot. for Summ. J., Attach. 1, at 6–7; State Dep't Reply in Supp. of Mot. for Summ. J., Attach. 1, at 4–7, Freedom Watch never objected in the district court to the Department's use of key-word searches. "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984). In any event, not only does FOIA expressly permit automated searches, *see* 5 U.S.C. § 552(a)(3)(D) (explaining that "'search' means to review, manually or by *automated means*") (emphasis added), but State Department employees also manually searched files for responsive documents, *see* State Dep't Mot. for Summ. J., Attach. 1, at 7; State Dep't Reply in Supp. of Mot. for Summ. J., Attach. 1, at 3–7. Freedom Watch likewise forfeited its challenge to the Department's withholding of the press-briefing memo. The Department invited Freedom Watch to file a surreply to "address the documents produced as a result of [the Department's] supplemental search," including the briefing memo, State Dep't Reply in Supp. of Mot. for Summ. J. 2 n.1, but Freedom Watch failed to do so. Finally, we see no abuse of discretion in the district court's denial of Freedom Watch's request for additional discovery. *See SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("This court will overturn the district court's

9

exercise of its broad discretion to manage the scope of discovery only in unusual circumstances."). As we have explained, "[a]n agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Department of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Because the State Department did exactly that, the district court "ha[d] discretion to forgo discovery and award summary judgment on the basis of affidavits." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). To be sure, Freedom Watch argued that "the circumstances [of the search] raise a presumption [of] bad faith behavior" by the State Department such that additional discovery was justified. Appellant's Br. 34. But Freedom Watch offered no evidence to support that allegation, and "[a] mere assertion of bad faith is not sufficient to overcome a motion for summary judgment." *Baker & Hostetler LLP*, 473 F.3d at 318 (internal quotation marks and citation omitted).

For the foregoing reasons, we remand to the district court to proceed in accordance with this opinion and affirm in all other respects.

*So ordered.*