## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **FREEDOM WATCH, INC.**,<br><br>Plaintiff,<br><br>v.<br><br>**NATIONAL SECURITY AGENCY**, <u>et al.</u>,<br><br>Defendants. | Case No. 1:12-cv-01088 (CRC) |

## <u>MEMORANDUM OPINION</u>

Four-and-a-half years ago, Freedom Watch, Inc., brought an action in this Court pursuant to the Freedom of Information Act ("FOIA"), seeking documents from the State Department and three other agencies related to a recently published *New York Times* article.  The Court ultimately entered judgment for the agencies on various grounds, all affirmed on appeal.  <u>See</u> <u>Freedom Watch, Inc. v. Nat'l Sec. Agency</u>, 783 F.3d 1340 (D.C. Cir. 2015).  During the appeal, however, former Secretary of State Hillary Clinton turned over to the Department emails from her private server, some of which State thought might be responsive to Freedom Watch's FOIA request.  Accordingly, as proposed by State, the Circuit remanded the case so that this Court could "manage record development and oversee the search of the former Secretary's emails[.]"  <u>Id.</u> at 1344.  State has since conducted that supplemental search, and—finding other potential sources of responsive documents—it has conducted additional searches as well.  Because these searches were adequate and otherwise complied with FOIA, the Court will grant summary judgment for State.

I.     **Background**

In June 2012, the *New York Times* published an article about classified government cyberattacks against the Iranian nuclear program.  See David E. Sanger, *Obama Order Sped Up Wave of Cyberattacks Against Iran*, N.Y. Times, June 1, 2012, at A1.  The article immediately prompted Freedom Watch to submit a FOIA request to the State Department, the Central Intelligence Agency ("CIA"), the Department of Defense, and the National Security Agency ("NSA") seeking, among other categories of documents, "[a]ny and all information that refers or relates in any way to information released to David E. Sanger," the author of the article.  Compl., Ex. 1.  Later the same month, Freedom Watch filed a Complaint in this Court, challenging the agencies' responses to its request.

The agencies variously moved for judgment on the pleadings and for summary judgment, and the Court resolved all motions in their favor, with one exception:  It initially denied State's motion for summary judgment as to Freedom Watch's request for any information released to David Sanger.  Order, Dec. 13, 2012, ECF No. 8.  State then proceeded to conduct an extensive search for responsive records, a process which included: identifying the "offices, overseas posts, or records systems within the Department" likely to contain the requested information; conducting full-text searches of the identified records, including a voluntary supplemental search; and manually reviewing the records of five employees whom Sanger interviewed.  See Freedom Watch, Inc. v. Nat'l Sec. Agency, 49 F. Supp. 3d 1, 4–5 (D.D.C. 2014) (detailing search efforts).  Satisfied that the search was adequate, the Court granted State's motion for summary judgment on the sole remaining claim.  Id. at 3.

On appeal, the D.C. Circuit affirmed the Court's judgments as to the CIA, Department of Defense, and NSA, and it rejected all of Freedom Watch's objections to the Court's grant of

summary judgment for State.  Freedom Watch, 783 F.3d at 1344–45.  In accordance with State's

request, however, the Circuit remanded the case so that the Department could process and search

emails that Secretary Clinton had kept on a private server, and had only recently made available.

Id. at 1344.  This was the sole purpose of the remand—"to manage record development and

oversee the search of the former Secretary's emails for records responsive to Freedom Watch's

FOIA request."  Id.

    Accordingly, on remand, this Court ordered State to "prioritize its search for responsive

electronic records as soon as [the] digitization of the relevant emails [was] complete," and it

directed the parties to "meet and confer concerning appropriate search terms."  Minute Order,

May 5, 2015.  The parties did so, but were unable to reach full agreement on the appropriate list

of terms.  See Joint Status Report, June 29, 2015, ECF No. 35.  After holding a telephone

conference on the matter, the Court ordered State to conduct the search using its list of proposed

terms, plus certain additional terms proposed by Freedom Watch.  See Minute Order, August 5,

2015.[1]  State conducted its search of Secretary Clinton's emails using those terms, but uncovered

no responsive documents.  Defs.' Status Report, Aug. 19, 2015, ECF No. 37; Defs.' Mem. Supp.

Mot. Summ. J. ("Defs.' MSJ"), Supplemental Declaration of John F. Hackett ("Hackett Decl.")

¶ 9.

    Soon after concluding that search, however, two former State employees provided the

Department with additional, potentially relevant records.  See Motion to Stay, Sept. 4, 2015, ECF

---

[1] The full list of search terms was as follows: sanger; dasang@nytimes.com;
@SangerNYT; "Obama Order Sped Up Wave of Cyberattacks Against Iran"; "Confront and
Conceal: Obama's Secret Wars"; stuxnet; Iran AND cyberattack; Iran AND cyberweapons; Iran
AND centrifuge; Iran AND worm; Iran AND "internet warfare"; Iran AND "Olympic games";
Iran AND "thumb drives"; Iran AND Natanz; "Project Olympic Games"; and "Operation
Olympic Games."  Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' MSJ"), Supplemental Declaration
of John F. Hackett ("Hackett Decl.") ¶ 8.

No. 40, at ¶¶ 5–6.  And in late 2015, the Department located a potentially responsive collection

of electronic files within the Office of the Executive Secretariat that had not previously been

searched.  See Defs.' Mot. for Extension of Time, Dec. 22, 2015, ECF No. 45.  For both sets of

newly revealed documents, State proposed—and the Court ordered—that the Department

conduct additional searches using the same list of search terms previously applied to Secretary

Clinton's emails.  Minute Order, Oct. 20, 2015; Minute Order, Jan. 11, 2016.  The Department

did so.  Among the documents from the former State employees, the Department found two

responsive "intra-agency email messages . . . detail[ing] discussions between State officials

regarding a briefing for an interview, including draft versions of the briefing."  Hackett Decl.

¶¶ 15, 19.  State produced those documents in part, redacting portions under the deliberative

process privilege as permitted by FOIA's Exemption 5, 5 U.S.C. § 552(b)(5).  Id. ¶ 19.  Upon

searching the file collection from the Executive Secretariat, the Department found and produced

in full one responsive document.  Id. ¶ 11.

　　　　State now moves for summary judgment, maintaining that its search was adequate, and

that it has released all responsive, non-exempt records.  Defs.' MSJ 5–12.  Freedom Watch

opposes the motion, challenging State's use of search terms and certain of its withholdings and

redactions.  Mem. Supp. Pl.'s Mot. for Discovery and Opp'n to Defs.' MSJ ("Pl.'s Opp'n") 13–

14, 18–20.  Freedom Watch also moves for discovery.  It asserts that State's belated unearthing

of potentially relevant documents—where the Department had earlier claimed to have performed

an adequate search—suggests bad faith and therefore warrants discovery.  Id. at 13, 17.  These

arguments, for the reasons outlined below, are ill-founded.  The Court will therefore grant State's

motion for summary judgment and deny Freedom Watch's motion for discovery.

## II.    Legal Standards

FOIA cases are typically resolved at summary judgment.  See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment is appropriately granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

When an agency's search is questioned, it must show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999)) (internal quotation marks omitted).  The search is judged by the individual circumstances of each case.  See Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  The central question is whether the search itself was reasonable, regardless of the results.  See Cunningham v. U.S. Dep't of Justice, 40 F. Supp. 3d 71, 83–84 (D.D.C. 2014).  Agencies need not turn over every stone, but they must conduct a "good faith, reasonable search of those systems of records likely to possess requested records."  Id. (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

Agency declarations, especially from individuals coordinating the search, are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard, 926 F.2d at 1200.  Indeed, courts can award summary judgment solely based on agency affidavits and declarations that are "relatively detailed and non-conclusory."  Id.  For that reason, "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith[,] and the court is satisfied that no factual dispute remains."  Baker & Hostetler LLP v. U.S.

Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (quoting Schrecker v. DOJ, 217 F.

Supp. 2d 29, 35 (D.D.C. 2002)).

**III.    Analysis**

    A.  FOIA Compliance

    The Court first considers Freedom Watch's challenges to State's FOIA compliance, of

which there are three.  First, Freedom Watch argues that the search was inadequate because, in

its view, "[a] keyword database search is notoriously an unreliable way to find documents."  Pl.'s

Opp'n 19.  But as the D.C. Circuit made clear in the course of rejecting that same argument on

appeal in this very case, "FOIA expressly permit[s] automated searches."  Freedom Watch, 783

F.3d at 1345 (citing 5 U.S.C. § 552 (a)(3)(D)).  And keyword searches in response to FOIA

requests are routine.  See, e.g., Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency, 113

F. Supp. 3d 313, 339 (D.D.C. 2015); Liberation Newspaper v. U.S. Dep't of State, 80 F. Supp.

3d 137, 145–6 (D.D.C. 2015); Hall v. CIA, 881 F. Supp. 2d 38, 61 (D.D.C. 2012); Physicians for

Human Rights v. U.S. Dep't of Def., 675 F. Supp. 2d 149, 163 (D.D.C. 2009).

    The only authority Freedom Watch cites in support of its argument is inapposite.  The

search in that case was inadequate not because the government had used a defined list of search

terms, but because it had applied those terms to the wrong *database*.  Pub. Citizen, Inc. v. Dep't

of Educ., 292 F. Supp. 2d 1, 7 (D.D.C. 2003) ("[B]ecause the database that was searched could

not be relied upon to contain the requested information, it follows that no amount of searches of

that database could be relied upon to turn up that information.").  In short, because it was

perfectly reasonable for State to conduct its search using a list of search terms, in accordance

with various orders from this Court, Freedom Watch's argument to the contrary is unavailing.

Freedom Watch also posits—without argument or analysis—that the two documents redacted on the basis of Exemption 5's deliberative process privilege "should be produced in full, unredacted form."  Pl.'s Opp'n 14.  But State has submitted a sworn declaration "demonstrat[ing] that the information withheld logically falls within the claimed exemption." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  The redacted documents are "intra-agency e-mail messages that detail discussions between State officials regarding a briefing for an interview, including draft versions of the briefing."  Hackett Decl. ¶ 19.  Such information logically falls within an exemption meant to protect "deliberations comprising part of a process by which governmental decisions and policies are formulated."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975) (citation omitted).  Accordingly, the Court will reject Freedom Watch's conclusory assertion that the redacted documents should be produced in full.

Finally, Freedom Watch urges that a "[one-]page briefing paper must be disclosed or at least examined in camera."  Pl.'s Opp'n 13, 18.  But the document to which Freedom Watch refers was identified and withheld pursuant to a search that occurred more than three years ago, in connection with a previous summary judgment motion.  See Second Suppl. Decl. Sheryl Walter ¶ 27, July 30, 2013, ECF No. 23-1.  Freedom Watch argued on appeal that the document had been improperly withheld, but the court deemed that argument forfeited, since it had not been raised below.  Freedom Watch, 783 F.3d at 1345.  Surely, if it was too late for the argument then, it is too late now.

B.  Motion for Discovery

The Court next considers Freedom Watch's motion for discovery.  In support of the motion, Freedom Watch relies on the background premise that "Congress intended [for] the usual process of discovery" to apply in FOIA cases—implying that discovery requests in such

cases are routinely or liberally granted.  Pl.'s Opp'n 15.  In fact, as previously stated,

"[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably

detailed, submitted in good faith[,] and the court is satisfied that no factual dispute remains."

Baker & Hostetler, 473 F.3d at 318.  The statutory provisions Freedom Watch cites—including

FOIA's *in camera* review and attorneys' fees provisions—do nothing to undermine that well-

settled precedent.

Aside from pressing an incorrect standard for granting FOIA discovery requests,

Freedom Watch also argues that there is evidence suggesting that State's sworn declaration was

"not submitted in good faith."  Pl.'s Opp'n 17.  The only evidence Freedom Watch points to in

support of that claim, however, is the fact that the Department continued to receive and identify

potentially relevant documents after performing its initial search.  See Pl.'s Opp'n 10–13.

Freedom Watch characterizes these actions as "inconsistent," since "after claiming to have

conducted an adequate search, the [Department] later found even more documents."  Id. at 11.

What this argument overlooks is the fact that most of the documents uncovered in the later stages

of this litigation came to light because former employees, including Secretary Clinton, turned

over documents to State that were not previously in the Department's possession.  In other

words, State could not have reviewed them because State did not have them.  And even if a case

could be made that the Executive Secretariat's files should have been searched more thoroughly

in the first instance, "mistakes do not imply bad faith.  In fact, [an] agency's cooperative

behavior of notifying the Court and plaintiff that it . . . discovered a mistake, if anything, shows

good faith."  Fischer v. DOJ, 723 F. Supp. 2d 104, 108–109 (D.D.C. 2010); see also Nat'l Inst. of

Military Justice v. U.S. Dep't of Def., 404 F. Supp. 2d 325, 333 (D.D.C. 2005) ("[I]t is well-

settled in this Circuit that subsequent disclosure of documents initially withheld does not alone establish bad faith.").

## IV. Conclusion

For the reasons outlined above, the Court will grant State's summary judgment motion and deny Freedom Watch's motion for discovery.[2] An Order accompanies this Memorandum Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  December 12, 2016

---

[2] For similar reasons, the Court will deny Freedom Watch's Motion to Take Discovery filed on November 7, 2016. None of the events or news articles Freedom Watch cites in support of that motion have any demonstrated relevance to the current case.